J-S62023-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ZAMAR SWIFT | |
| Appellant | No. 508 WDA 2015 |

Appeal from the Judgment of Sentence March 10, 2015
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0002110-2014
CP-25-CR-0002113-2014

BEFORE:  GANTMAN, P.J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY JENKINS, J.:                **FILED NOVEMBER 16, 2015**

Appellant Zamar Swift appeals from the judgment of sentence entered on March 10, 2015 in the Erie County Court of Common Pleas following his jury trial conviction of two counts each for unlawful delivery of heroin, possession of heroin, and criminal use of a communication facility.[1]   We affirm.

The trial court set forth the following facts:

> Trooper James Wicker (now retired) of the Pennsylvania State Police was conducting undercover drug investigations during the period of time that [Appellant] was charged. He had identified [Appellant] as a possible dealer and

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. §§ 780-113(a)(30), 780-113(a)(16), and 18 Pa.C.S. § 7512(a), respectively.

made plans to contact him to purchase heroin for a hundred dollars. With the use of a confidential informant, a phone call was placed to [Appellant]. That communication was used to introduce the trooper to [Appellant]. On April 24, 2013, Trooper Wicker met with the confidential informant at the Franklin Terrace Housing Project in the City of Erie. Eventually, the trooper made contact directly with [Appellant] via cell phone. They agreed that the trooper would purchase the hundred dollars of heroin from [Appellant] and set a meeting to occur at St. Peter's Cathedral parking lot at 11th and Sassafras Streets in downtown Erie. At that location, the trooper called [Appellant] who said he was on his way to the CVS Pharmacy at 12th and Parade Streets. The trooper proceeded there, arriving between 1:00 and 1:30 p.m. At that location, he called [Appellant] who responded that he would be there in approximately ten minutes driving a white Buick. [Appellant] arrived and proceeded to sell the trooper a hundred dollars worth of heroin (0.35 grams) in a face-to-face, hand-to-hand transaction. During that episode, the trooper had a clear view of [Appellant's] face.

On June [5], 2013, Trooper Wicker texted [Appellant] indicating that he wanted to make another one hundred dollar purchase. Between 1:30 and 2:00 p.m. [Appellant] and Trooper Wicker met at Franklin Terrace. Once again, [Appellant] made a hand-to-hand sale of .05 grams of heroin to Trooper Wicker. In addition to Trooper Wicker's testimony, the Commonwealth also presented the testimony of forensic scientist Ted Williams and Neil Repko who confirmed that the substances were heroin.

1925(a) Memorandum Opinion, 4/17/2014, at 2-3 (internal citations omitted).

Although the drug sales occurred in April and June of 2013, Appellant was not charged until June of 2014. At trial, Trooper Wicker testified he did not charge Appellant until a year after the transactions because he did not

want to compromise his identity, as he was working undercover. N.T., 1/12/2015, at 35. He stated:

> What I do usually, I will work a few cases in a particular area. Once I've compiled a few defendants, if you will, a few cases, then I'll file all the charges at once. That way, again my identity is not being compromised and I'm not in court on a regular basis.

*Id.* at 35-36.

Trooper Wicker also testified at a pre-trial hearing. He explained why he did not seek a surveillance video from CVS to confirm the transaction as follows:

> If I went to CVS or anyone else and identified myself as an undercover and let them know that undercover buys were being conducted there, they would know my identity. This was an ongoing investigation that not only involved the defendant, but other defendants in that particular area [] and the last thing that I wanted to do was compromise my identity by getting surveillance tapes and whatnot.

N.T., 11/14/2014, at 7. He further testified he had all information he needed to arrest Appellant for the April 24, 2013 transaction immediately following the transaction and all information he needed to arrest Appellant for the June 5, 2013 transaction immediately following that transaction. *Id.* at 9. As to why there was a delay in arrest, the trooper testified at the pre-trial hearing as follows:

> Q: Trooper, the reason that you did not arrest [Appellant] at that time was not because you couldn't find him; correct?
>
> A: That is correct. That was not the reason.

Q: Okay. And you sent the suspected drugs to the lab to be analyzed; correct?

A: Yes.

Q: And that was for the incident on April 24th as well June 5th; correct?

A: Yes.

Q: Okay, and those were returned shortly thereafter?

A: Yes.

Q: Okay, so you had the lab results for the June 5, 2013 incident shortly thereafter June 5th?

A: Probably within a few months. It usually takes our lab two to three months, sometimes a little longer.

Q: Okay, so you weren't waiting to file charges pending lab results to come back; correct?

A: That's correct.

Q: And after June 5, 2013, did you make any additional buys with [Appellant]?

A No, not with [Appellant].

Q: Did you make any arrests or any subsequent development of information in regards to those two events past June 5th?

A: No. I didn't. I made attempts to do additional buys, but he had changed his phone number at that point and I was unable to get a hold of him. I was making attempts to get his new number, but that was fruitless.

Q: And about how many attempts did you make?

A: I'm going to say several over the course of a couple of months.

Q: And did you document in your reports as far as the dates and times that you attempted to make those contacts?

A: No, I didn't.

Q: And do you remember when you eventually filed charges against [Appellant]?

A: No, I don't.

Q: Would June 18th of 2014 sound correct?

A: That would be accurate, yes.

Q: Okay, and that would be approximately one year and 13 days after the last transaction had occurred?

A: Yeah, that would be accurate.

Q: And there were no subsequent developments [] in that one year and 13 days?

A: Not on [Appellant's] particular case.

N.T., 11/14/2014, at 10-15.

In June of 2014, Appellant was charged at two separate docket numbers. At CP-25-CR0002110-2014, he was charged with delivery of heroin, possession with intent to deliver heroin ("PWID"),[2] criminal use of a communication facility, and possession of heroin for the April 24, 2013 transaction. At docket CP-25-CR0002113-2014, he was charged with the same crimes for the June 5, 2013 transaction. The Commonwealth withdrew the PWID charges at trial. On January 12, 2015, a jury found Appellant guilty of delivery, use of a communication facility, and possession.

On March 10, 2015, the trial court sentenced Appellant to an aggregate term of 48 to 96 months' imprisonment.[3] On March 12, 2015,

_____

[2] 35 Pa.C.S. § 780-113(a)(30).

[3] At docket CP-25-CR-0002113-2014, the trial court sentenced Appellant to 24 to 48 months' incarceration for delivery and 12 to 24 months'
*(Footnote Continued Next Page)*

- 5 -

Appellant filed a post-sentence motion, which was denied on March 16, 2015. Appellant filed a timely notice of appeal. Both Appellant and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellant raises the following issues on appeal:

> 1. [Whether t]he evidence in this case was insufficient to prove that [Appellant] committed the crimes for which he was convicted when the evidence consisted of nothing more than the trooper's testimony regarding his recollection of the events.

> 2. [Whether t]he court erred in denying [Appellant's] pretrial motion which asserted that the delay of the arrest in this case prejudiced [Appellant's] ability to defend himself.

Appellant's Brief at 2.

Appellant's first issue challenges the sufficiency of the evidence. Appellant claims Trooper Wicker's testimony was insufficient evidence of the crimes because: (1) the trooper testified the person who sold him the drugs had no memorable features, but Appellant had numerous tattoos; (2) the trooper completed an incident report for another suspect and mistakenly put Appellant's name on the report, and (3) there were no photographs of the transaction. Appellant's Brief at 6-8.

_(Footnote Continued)_ _____

incarceration for criminal use of a communication facility, concurrent to the sentence imposed for the delivery conviction. The possession conviction merged with the delivery conviction for sentencing purposes. The trial court imposed the same penalties for Appellant's convictions at CP-25-CR-0002110-2014, to be served consecutively to the sentence imposed for the CP-25-CR-0002113-2014 convictions.

We apply the following standard when reviewing a sufficiency of the evidence claim: "[W]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Lehman*, 820 A.2d 766, 772 (Pa.Super.2003), *affirmed*, 870 A.2d 818 (Pa.2005) (quoting *Commonwealth v. DiStefano*, 782 A.2d 574 (Pa.Super.2001)). When we apply this standard, "we may not weigh the evidence and substitute our judgment for the fact-finder." *Id.*

"[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Lehman*, 820 A.2d at 772 (quoting *DiStefano*, 782 A.2d at 574). Moreover, "[a]ny doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Id.* "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Id.*

In applying the above test, we must evaluate the entire record and we must consider all evidence actually received. *DiStefano*, 782 A.2d at 582 (quoting *Commonwealth v. Hennigan*, 753 A.2d 245, 253 (Pa.Super.2000)). Further, "the trier of fact while passing upon the

credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Id.*

Delivery of a controlled substance is defined as:

Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-1113(a)(30).

Possession of a controlled substance is defined as:

Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

35 P.S. § 780-1113(a)(16).

Criminal use of communication facility is defined as:

A person commits a felony of the third degree if that person uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title or under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act. Every instance where the communication facility is utilized constitutes a separate offense under this section.

18 Pa.C.S. § 7512(a). Further, "communication facility" is defined as "a public or private instrumentality used or useful in the transmission of signs, signals, writing, images, sounds, data or intelligence of any nature

transmitted in whole or in part, including, but not limited to, telephone, wire, radio, electromagnetic, photoelectronic or photo-optical systems or the mail." 18 Pa.C.S. § 7512(c).

As the fact-finder, the jury was free to find the trooper credible. *See DiStefano*, 782 A.2d at 582. Trooper Wicker's testimony established Appellant met the trooper on two occasions, possessed heroin at the time of the meetings, and sold the trooper heroin at both meetings. N.T., 1/12/2015, at 19, 23-25, 29-33. The stipulated lab results confirmed the substance Appellant provided to the trooper was .35 grams of heroin on April 24, 2013, and .05, plus or minus .01, grams of heroin on June 5, 2013. *Id.* at 27, 34. The evidence therefore was sufficient to establish, beyond a reasonable doubt, that Appellant possessed heroin and delivered heroin. *See* 35 P.S. § 780-1113(a)(16), (a)(30). Further, Trooper Wicker testified he communicated with Appellant via cell phone to determine meeting times and locations, therefore establishing criminal use of a communication facility. N.T., 1/12/2015, at 20-21, 29-30; 18 Pa.C.S. § 7512(a). Accordingly, Appellant's first claim is meritless.

Appellant next contends that he suffered prejudice because the Commonwealth delayed in prosecuting the drug transactions. Appellant's Brief at 8. The transactions occurred in April and June of 2013, but the Commonwealth did not file charges until June of 2014. Appellant maintains he suffered prejudice because he was unable to recall the events of April 24,

2013 and June 5, 2013, and because possibly exculpatory recordings from nearby businesses were no longer available. *Id.* at 8-9.[4] We disagree.

Whether Appellant's due process rights were violated is a question of law. Our standard of review is *de novo* and our scope of review is plenary. **Commonwealth v. Moody**, 46 A.3d 765 (Pa.Super.2012) (citing **In re Wilson**, 879 A.2d 199, 214 (Pa.Super.2005) (*en banc* )).

To determine whether a pre-arrest delay violated a defendant's due process rights under the Fifth Amendment of the United States Constitution or Article 1, Section 9 of the Pennsylvania Constitution, courts apply the following two-part test: "(1) the defendant must show actual prejudice from the delay, and (2) prejudice alone is not sufficient to show a violation of due process where the delay was due to the government's continuing investigation of the crime." **Commonwealth v. Scher**, 803 A.2d 1204, 1217 (Pa.2002). The Supreme Court of Pennsylvania has clarified this test, stating:

> [T]o prevail on a due process claim based on pre-arrest delay, the defendant must first show that the delay caused him actual prejudice, that is, substantially impaired his or her ability to defend against the charges. The court must then examine all of the circumstances to determine the validity of the Commonwealth's reasons for the delay. Only in situations where the evidence shows that the delay

---

[4] Although Appellant maintains the drugs had been destroyed prior to trial, the Commonwealth marked the drugs as an exhibit at trial, and Trooper Wicker identified the drugs. Appellant's Brief at 9; N.T., 1/12/2015, at 27, 34.

was the product of intentional, bad faith, or reckless conduct by the prosecution, however, will we find a violation of due process.

*Id.* at 1221-22 (internal footnote deleted).

Here, Appellant failed to establish actual prejudice. Although he elicited testimony that Trooper Wicker did not request surveillance video from cameras in the vicinity of the transaction, he failed to establish any surveillance video existed that would have captured the transaction. Further, the delay was not intentional or in bad faith, nor was it the result of reckless conduct by the prosecution. Rather, the delay in prosecution was to allow Trooper Wicker to remain undercover. Accordingly, Appellant failed to establish the delay in his arrest violated his due process rights. *See Scher*, 803 A.2d at 1221-22.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/16/2015