J-S03033-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAKE WILLIAM LAZIER | |
| Appellant | No. 1326 EDA 2015 |

Appeal from the Judgment of Sentence April 9, 2015
In the Court of Common Pleas of Pike County
Criminal Division at No(s): CP-52-CR-0000093-2014

BEFORE:  FORD ELLIOTT, P.J.E., OTT, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                **FILED JANUARY 14, 2016**

Appellant Jake William Lazier appeals from the judgment of sentence entered in the Pike County Court of Common Pleas following his jury trial conviction for theft by unlawful taking[1] and theft by deception.[2]  We affirm.

The conviction stems from Appellant's sale of Gary Page's motorcycle to Richard Repa for $500.00.  Appellant failed to inform Mr. Repa that he did not have authority to sell the motorcycle.

The trial court summarized the testimony at trial as follows:

> [W]itness Diane Taylor was in a relationship with the motorcycle's [] owner, Gary Page, for eight (8) years. [N.T., 1/21/2015, at 99:18-25].  Ms. Taylor had Mr. Page removed from her home in 2008 as a result of domestic

---

[1] 18 Pa.C.S. § 3921(a).

[2] 18 Pa.C.S. § 3922(a).

problems. *Id.* at 98:18-19. The motorcycle was among many personal possessions Mr. Page left behind in the wake of his removal. Mr. Page also testified at trial:

Well, I felt it was best to begin to get some of my personal property back a little at a time. I thought that if we went nice and easy and she calmed down and she wasn't so upset that I could begin to get my personal property and take the motorcycle last since that was the biggest thing.

In the beginning[,] we did meet in public places and exchange a few personal items that were mine, but it was getting less and less. Every time I met her, I would get just a few items. The items that I wanted such as clothing and things of that sort[,] pictures of my family, she wouldn't give me.

I played the guitar for many years I couldn't get that back I told her she can keep the furniture, because it was part of the household that she was living in and I didn't want to disrupt it, so I said, "It's furniture, it's old, you know, you can have that," so I never thought, never thought that eventually I wouldn't get my motorcycle back from her. I miss my motorcycle, I mean, you know, it's mine.

[N.T., 1/21/2015, at 74:12 - 75:7].

[Ms. Taylor testified to the following:[3]]

Q. You mention in 2012 you moved from the home in Dingmans Ferry, you didn't know where you were going to be going, did you make arrangements for the motorcycle to be kept someplace?

A. Yes, I did.

---

[3] The trial court noted that although Ms. Taylor testified that "the motorcycle was 'abandoned' at her home, she was referring to Mr. Page's failure to have it removed therefrom, which has no bearing on whether [] the motorcycle was 'abandoned' under the law when Appellant sold it. In fact, Ms. Taylor did not abandon the motorcycle at the home when she vacated it in 2012." Opinion 8/25/2015, at 5.

Q. Could you tell me about that?

A. A friend of my son[] offered to help me out and take it, garage it where he was living.

[N.T., 1/21/2015, at 100:18 – 25].

Mr. Jamie Finnegan,[4] who lived at the home at which the motorcycle was stored when Ms. Taylor left the Dingman's Ferry home[,] testified on direct examination by the Assistant District Attorney:

Q. What's your understanding of whose motorcycle that was?

A. I really don't know his name totally. I know it was a big controversy with the motorcycle, but it was Jessie Taylor that I was looking after it for.

Q. Sir, where was that motorcycle kept?

A. In the driveway under a tarp.

Q. Sir, had you ever been spoken to by Jake Lazier about selling that -- him selling that motorcycle or taking that motorcycle?

A. Yes.

Q. Tell me about that?

A. On a few different occasions and I told him not to touch it.

Q. Did you ever give him permission to sell that motorcycle and say it was okay for him to do that?

A. No, sir.

[N.T., 1/21/2015, at 198:1-19].

_____

[4] Jamie Finnegan was married to Appellant's mother, Theresa Finnegan, who also resided at the home where the motorcycle was stored. N.T., 1/21/2015, at 136, 138.

Appellant was aware that he had no authority to sell the motorcycle in question, as illustrated by his mother's testimony on cross examination by Appellant's attorney:

Q. Now, about this Facebook page, is it your testimony that you had a Facebook conversation with your son Jake?

A. Yes, sir.

Q. That he asked you if your husband would get mad if you sold the motorcycle that was lying around?

A. Yes.

[Q. Did he ever say – and you said yes, he would get mad?

A. Yes.

N.T., 1/21/2015, at 183:2 -17].

The buyer, Mr. Repa, testified on direct examination by the Assistant District Attorney:

Q. What was the story [Appellant] told you about it; if you remember?

A. Basically[,] that it belonged to his dad and his dad's friend and something to do with his dad's friend going through divorce or something like that and it's been sitting there for years he says.

Q. So, you offered him $700.00 for it?

A. Correct.

Q. Did he take you up on it at that time?

A. No, he told me he had to speak to his dad and his dad's friend or his father or somebody.

[N.T., 1/21/2015, at 220:6-16.[5]]

_____

[5] Later that evening Appellant texted Mr. Repa and told him he would sell the motorcycle for $700.00. Mr. Repa informed Appellant he now only had
*(Footnote Continued Next Page)*

Opinion, 8/25/2015, at 4-7.

On January 22, 2015, the jury found Appellant guilty of theft by unlawful taking and theft by deception. On April 9, 2015, the trial court sentenced Appellant to concurrent sentences of 14 months to 4 years' imprisonment on the theft convictions.

Appellant filed a timely notice of appeal. Both Appellant and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellant raises the following issues on appeal:

> 1. Whether the evidence was insufficient to establish Appellant's conviction of [t]heft by [u]nlawful [t]aking because the Commonwealth did not disprove the properly raised defense of abandonment.
>
> 2. Whether the evidence was insufficient to establish Appellant's conviction of [t]heft by [d]eception because the Commonwealth did not disprove the properly raised defense of abandonment.
>
> 3. Whether the evidence was insufficient to establish that the motorcycle was not abandoned property as defined by Pennsylvania Law.
>
> 4. Whether the [t]rial [c]ourt erred and abused its discretion by denying Appellant's [m]otion for [a]rrest of [j]udgment also known as [m]otion for [j]udgment of [a]cquittal because the motorcycle was abandoned property.

*(Footnote Continued)* ⸻

$500.00, and Appellant agreed to sell the motorcycle for $500.00 to Mr. Repa. N.T., 1/21/2015, at 220-21.

Appellant's Brief at 6. All four of Appellant's issues raise the same question: Whether the Commonwealth failed to present sufficient evidence of the crimes because the motorcycle was abandoned.

We apply the following standard when reviewing a sufficiency of the evidence claim: "[W]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Lehman*, 820 A.2d 766, 772 (Pa.Super.2003), *affirmed*, 870 A.2d 818 (2005) (quoting *Commonwealth v. DiStefano*, 782 A.2d 574 (Pa.Super.2001)). When we apply this standard, "we may not weigh the evidence and substitute our judgment for the fact-finder." *Id.*

"[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Lehman*, 820 A.2d at 772 (quoting *DiStefano*, 782 A.2d at 574). Moreover, "[a]ny doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Id.* "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Id.*

In applying the above test, we must evaluate the entire record and we must consider all evidence actually received. *DiStefano*, 782 A.2d at 582.

Further, "the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Id.*

Appellant was convicted of theft by unlawful taking[6] and theft by deception.[7]  A person is guilty of theft by unlawful taking where he "unlawfully takes, or exercises unlawful control over, moveable property of another with intent to deprive him thereof." 18 Pa.C.S. § 3921(a).  Theft by deception is defined as:

> **(a) Offense defined.**--A person is guilty of theft if he intentionally obtains or withholds property of another by deception.  A person deceives if he intentionally:
>
> . . .
>
> (2) prevents another from acquiring information which would affect his judgment of a transaction . . . .

18 Pa.C.S. § 3922(a).

Abandonment is a defense to the crime of theft.  **See Commonwealth v. Meinhart**, 98 A.2d 392, 394-95 (Pa.Super.1953) (finding person cannot be convicted of larceny of abandoned property, reasoning abandoned property does not qualify as property subject to larceny because "[i]t belongs to no one, nor is it regarded as being in the

---

[6] The jury found Appellant guilty of the unlawful taking of Mr. Page's motorcycle.

[7] The jury found Appellant guilty of theft by deception of Mr. Repa's $500.00.

possession of any one"). This Court has defined abandoned property as property "to which an owner has voluntarily relinquished all right, title, claim and possession with the intention of terminating his ownership, but without vesting it in any other person and with the intention of not reclaiming further possession or resuming ownership, possession or enjoyment." *Commonwealth v. Wetmore*, 447 A.2d 1012, 1014 (Pa.Super.1982). We have further noted:

> Abandonment involves an intention to abandon, together with an act or omission to act by which such intention is apparently carried into effect. In determining whether one has abandoned his property or rights, the intention is the first and paramount object of inquiry, for there can be no abandonment without the intention to abandon. The intent to abandon is to be determined from all of the facts and circumstances of the case. The question of whether a particular act amounts to an abandonment is generally one of intention. When deciding whether an object has been abandoned, we must consider the nature of the property, the acts and conduct of the parties in relation thereto and the other surrounding circumstances.

*Id.* (internal citations omitted).

At trial, the trial court stated the elements of the theft charges and instructed the jury that the Commonwealth was required to prove all elements of theft beyond a reasonable doubt. N.T., 1/22/2015, at 119, 121-22, 116. It also accurately defined abandonment, using the definition

provided by this Court in **Wetmore**. *Id.* at 120-21.[8] The trial court then stated: "It is up to you as jurors to determine whether the property in this matter, based on the evidence that you have heard, meets the definition of abandonment." *Id.* at 121. The instructions never discussed the burden of proof for abandonment, and never shifted the Commonwealth's burden to prove all elements of the crime beyond a reasonable doubt.[9]

There was sufficient evidence for a jury to conclude that Mr. Page had not abandoned the motorcycle and that Appellant knew the motorcycle had not been abandoned. Mr. Page, the victim, testified he had not abandoned it. Ms. Taylor testified that the motorcycle belonged to Mr. Page and that it was being stored in Jamie Finnegan's garage. Mr. and Mrs. Finnegan testified that the motorcycle belonged to someone and that they had told Appellant he could not dispose of it.

Accordingly, sufficient evidence existed for the jury to find all elements for theft by unlawful taking beyond a reasonable doubt. The Commonwealth established that Appellant intentionally took, and sold, Mr. Page's

---

[8] During deliberations, the jury requested that the court again define abandonment, and the trial court read the same definition of abandonment as it read during the initial instructions. N.T., 1/22/2015, at 129-30.

[9] Although the trial court's 1925(a) opinion discussed the burden of proof, stating Appellant had the burden of persuasion as to the defense of abandonment, the jury instructions contained no such suggestion. Opinion, 8/25/2015, at 4. The instructions stated the elements of the crimes, defined abandonment, and stated that the Commonwealth had the burden to prove each element beyond a reasonable doubt. This was not error.

motorcycle, which was "property of another." Further, the Commonwealth, therefore, established all elements of theft by deception beyond a reasonable doubt. The testimony established that Mr. Repa paid Appellant $500.00 for the motorcycle, that the motorcycle was not abandoned, and that Appellant did not inform Mr. Repa that he did not have the authority to sell the motorcycle.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/14/2016