J-S43039-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF |
|---|---|
| Appellee | PENNSYLVANIA |
| v. | |
| DERIACE STONE | |
| Appellant | No. 1677 MDA 2015 |

Appeal from the Judgment of Sentence August 3, 2015
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0002876-2014

BEFORE:  GANTMAN, P.J., PANELLA, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                    **FILED JULY 15, 2016**

Appellant Deriace Stone appeals from the judgment of sentence entered on August 3, 2015 in the York County Court of Common Pleas following his bench trial convictions for aggravated assault (serious bodily injury), aggravated assault (with a deadly weapon), robbery, and conspiracy to commit robbery.[1]  We affirm.

The trial court sets forth the following factual and procedural history:

> After midnight on March 20, 2014, James Paul Shickley (the "victim") went to the Sheetz convenience store on South Queen Street, York County.  (N.T. Trial, at 6.)  The victim was carrying $800 to $900 in cash and paperwork from the department of transportation.[1]  *Id.* at 15.  While at the Sheetz store, the victim briefly conversed with [Appellant] and his [girlfriend] Jessica Steininger.  *Id.* at

---

[1]  18 Pa.C.S. §§ 2702(a)(1), 2702(a)(4), 3701(a)(1), and 903(c), respectively.

78. The victim left the store and went home. *Id.* at 53. Shortly thereafter, a white Honda pulled up to the victim's house and beeped its horn. *Id.* at 7-8, 54[-55], 82. The victim identified the passenger as [Appellant]. *Id.* at 8[-9]. The driver of the vehicle was Jessica Steininger. *Id.* at 80. The victim exited the house and spoke with Steininger. *Id.* at 9. [Appellant] then exited the vehicle and approached the victim. *Id.* [Appellant] testified that he handed the victim a twenty-dollar bill in an effort to buy drugs, however, the victim contests that the encounter involved drugs. *Id.* at 15, [146-]147. The victim's wife, Vonnie Shickley, testified that [Appellant] made statements indicating he was "going to roll" the victim. *Id.* at 55. [Appellant] then jumped on top of the victim. *Id.* The victim recalled kicking at [Appellant] as [Appellant] was cutting the victim's jeans with a knife.[2] *Id.* at 10. The victim's wife attempted to call 9-1-1, but was unable to unlock her phone. *Id.* at 55-56. She then ran outside and told [Appellant] that the police were responding. *Id.* at 56. [Appellant] jumped onto the back of the vehicle and instructed Steininger to drive away. *Id.* While the vehicle drove away, [Appellant] attempted to cover the license plate of the vehicle. *Id.* However, the victim's wife was able to read a portion of the license plate and later provided that evidence to police. *Id.* at 57. During an interview the following day, she told police that she saw [Appellant] take the victim's CDL paperwork. *Id.* at 75.

[1] This paperwork was referred to throughout the trial as "CDL paperwork."

[2] Testimony conflicts with regard to the extent to which the victim's jeans were cut or torn during the struggle.

Steininger testified at trial that after the attack, she observed [Appellant] holding a knife that was about seven to seven-and-a-half inches in length. [(N.T. Trial,] at 85-86. She also testified that [Appellant] discarded the knife in a field somewhere between the scene of the incident and Windsor [B]orough in York County. *Id.* at 86. Steininger also saw [Appellant] possessing the victim's CDL paperwork. *Id.*

Ultimately, due to some confusion as to the location of the incident, police responded to the Sheetz store where they met the victim and his wife. *Id.* at 11, 57-58, 116. Officer Laura Wilson, who responded to the scene, photographed a stab wound on the victim's back that was about two inches in length. *Id.* at 117. The wound was actively bleeding "rivers of blood." *Id.* Officer Wilson testified that she noticed the back pocket on the victim's jeans was torn. *Id.* at 122. The victim was then taken to an area hospital to receive treatment. *Id.* at 11.

Upon arrival at WellSpan York Hospital, the victim was presented to hospital staff as a "trauma alert" due to the "life threatening complications" of his injury. [(N.T. Trial] at 39-40. The victim was treated for a single stab wound just below the right scapula measuring about three centimeters in length. *Id.* at 40. The victim was diagnosed with a "traumatic hemopneumothorax" or "a traumatic hemorrhage within the chest." *Id.* at 40, 42. Such an injury is caused by injury to the lung "due to a tear" in [the] chest cavity. *Id.* at 40-41. The victim was hospitalized and treated over the subsequent 48 to 72 hours. *Id.* at 46-47. Possible complications of the victim's injury included hemorrhagic shock, empyema, blood clotting, respiratory distress or failure, septic shock, and permanent nerve damage. *Id.* at 44-45. Possible complications stemming from treatment include infection, additional bleeding, and further damage to the lung. *Id.* at 46.

After three days of hospitalization, the victim remained out of work for three weeks, and continued to suffer from pain caused by the injury. [(N.T. Trial)] at 13-14.

[Appellant] was arrested and charged with two counts of aggravated assault and one count each of robbery and criminal conspiracy to commit robbery.

1925(a) Opinion, 12/8/2015, at 1-5 (some internal footnotes omitted).

Following a non-jury trial, the trial court found Appellant guilty of the aforementioned crimes. On August 3, 2015, the trial court sentenced Appellant to an aggregate term of 9 to 18 years' incarceration.[2]

On August 13, 2015, Appellant filed post-sentence motions challenging the weight of the evidence and the sufficiency of the evidence for his aggravated assault (serious bodily injury) conviction and robbery conviction. Following a September 3, 2015 hearing, the trial court denied the motion.

On September 29, 2015, Appellant filed a timely notice of appeal. Both Appellant and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellant raises the following issue on appeal:

> 1. Whether the Commonwealth failed to present sufficient evidence to convict Appellant of aggravated assault and robbery when the evidence presented at trial failed to establish beyond a reasonable doubt that Appellant caused or attempted to cause serious bodily injury to the victim.

Appellant's Brief at 4.

We apply the following standard when reviewing a sufficiency of the evidence claim: "[W]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to

---

[2] The trial court sentenced Appellant to 9-18 years' incarceration for the aggravated assault (serious bodily injury) conviction, 33 to 66 months' incarceration for the aggravated assault (with a deadly weapon) conviction, 9 to 18 years' incarceration for the robbery conviction, and 9-18 years' incarceration for the conspiracy to commit robbery conviction. All sentences were imposed concurrently.

enable the fact-finder to find every element of the crime beyond a reasonable doubt." **Commonwealth v. Lehman**, 820 A.2d 766, 772 (Pa.Super.2003), *affirmed*, 870 A.2d 818 (Pa.2005) (quoting **Commonwealth v. DiStefano**, 782 A.2d 574 (Pa.Super.2001)). When we apply this standard, "we may not weigh the evidence and substitute our judgment for the fact-finder." **Id.**

"[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." **Lehman**, 820 A.2d at 772 (quoting **DiStefano**, 782 A.2d at 574). Moreover, "[a]ny doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." **Id.** "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." **Id.**

In applying the above test, we must evaluate the entire record and we must consider all evidence actually received. **DiStefano**, 782 A.2d at 582. Further, "the trier of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." **Id.**

A defendant is "guilty of aggravated assault if he: (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme

indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1). "For aggravated assault purposes, an 'attempt' is found where the accused, with the required specific intent, acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another." *Commonwealth v. Martuscelli*, 54 A.3d 940, 948 (Pa.Super.2012) (quoting *Commonwealth v. Gruff*, 822 A.2d 773, 776 (Pa.Super.2003)). "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

Appellant argues the Commonwealth failed to present sufficient evidence that serious bodily injury occurred. Appellant's Brief at 8. He argues there is nothing to indicate the victim suffered a substantial risk of death.[3] *Id.* Appellant further claims the victim suffered no serious,

---

[3] Appellant claims that Dr. Amy Rushing, a former staff surgeon at WellSpan York Hospital, testified that: although the victim presented for trauma alert, his blood pressure and heart rate were stable; that the victim suffered a single puncture wound that that was 3 centimeters in length and was not bleeding at the time of her assessment; that a chest tube was placed to assist with breathing, but that it was a stable situation; and that this type of injury presents as a stable situation. Appellant's Brief at 8-9. He claims Dr. Rushing testified that there were "really . . . no other organs. It was far enough away from the spine where a spinal cord injury was highly unlikely. It was underneath the scapula, or the shoulder blade, so it entered a soft tissue and multiple layers of muscle." *Id.* at 9 (citing N.T., 6/4/2015, at 43). Appellant further notes that Dr. Rush testified that the type of injury was not likely to cause significant harm, life-threatening bleeding or shock unless left untreated. *Id.*

permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ.[4] *Id.* at 9.

Contrary to Appellant's contention, the Commonwealth presented sufficient evidence that the victim suffered serious bodily injury. The trial court concluded:

> As a result of the attack, the victim suffered a three-centimeter stab wound to the back near the right scapula, or shoulder blade, and was diagnosed with a "traumatic hemopneumothorax" injury, or hemorrhaging within the chest cavity. Such injury, if left untreated, could lead to shock, respiratory distress or failure, sepsis, or organ failure. These complications are life-threatening. Thus, [the trial c]ourt found beyond a reasonable doubt that [Appellant] intentionally caused bodily injury that created a substantial risk of death to the victim.

1925(a) Opinion, 12/8/2015, at 9 (internal citations to record omitted). The victim received help, and was spared the more serious complications to his injury. However, the Commonwealth presented sufficient evidence from which the fact-finder could conclude the injury inflicted "create[d] a substantial risk of death."[5]

---

[4] Appellant argues the victim was hospitalized for three days, had no need for any breathing treatments once he left the hospital, had two follow-up appointments with his physicians, has two small scars, and returned to his full-time work as a truck driver three weeks after the incident. Appellant's Brief at 9.

[5] Further, the Commonwealth presented sufficient evidence that Appellant intended to cause serious bodily injury. He used a knife during a robbery, and inflicted a stab wound. *See, e.g., Gruff*, 822 A.2d at 780 (finding sufficient evidence that appellant attempted to cause serious bodily injury where he placed a deadly weapon (loaded rifle with an attached bayonet),

*(Footnote Continued Next Page)*

Moreover, we agree with the trial court's conclusion that the Commonwealth presented sufficient evidence of robbery. The robbery statute provides:

> (a) Offense defined.--
>
> (1) A person is guilty of robbery if, in the course of committing a theft, he:
>
> (i) inflicts serious bodily injury upon another[.]

18 Pa.C.S. § 3701(a)(1)(i). As discussed above, the Commonwealth presented sufficient evidence that Appellant inflicted serious bodily injury upon another. Further, the Commonwealth presented evidence that Appellant and Steininger discussed stealing the victim's money and that Appellant actually took the victim's CDL paperwork. Opinion, 12/8/2015, at 10.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/15/2016

*(Footnote Continued)* ─────────

against victim's throat and said, "I just ought to kill you . . . . Do you want to die today or tomorrow?").