J-S77031-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: M.G., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.C.-R., FATHER | |
| | No. 814 MDA 2016 |

Appeal from the Order Entered April 26, 2016
in the Court of Common Pleas of Lancaster County
Juvenile Division at No.: CP-36-DP-0000181-2015

| | |
|---|---|
| IN THE INTEREST OF: J.C., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.C.-R., FATHER | |
| | No. 815 MDA 2016 |

Appeal from the Order Entered April 26, 2016
in the Court of Common Pleas of Lancaster County
Juvenile Division at No.: CP-36-DP-0000180-2015

BEFORE: PANELLA, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:               **FILED JANUARY 06, 2017**

J.C.-R. (Appellant) appeals from the April 26, 2016 orders of the Court

of Common Pleas of Lancaster County, Juvenile Division, in case numbers

---

[*] Retired Senior Judge assigned to the Superior Court.

181-2015 and 180-2015.[1] In its order at case number 181-2015, the court adjudicated M.G. (born in March of 1999) dependent, and made a finding that M.G. was the victim of abuse perpetrated by Appellant. In case number 180-2015, the court adjudicated J.C. (born in August of 2015) **not** dependent, but found aggravated circumstances as to J.C. and against Appellant. We affirm the order in case number 181-2015 as to M.G., and vacate in part and remand the order in case number 180-2015 as to J.C.

Lancaster County Children and Youth Social Service Agency (the Agency) most recently became involved with the subject family on May 15, 2015, as a result of the pregnancy of sixteen-year-old M.G. and allegations that she was impregnated by her step-father, Appellant. Other reports were thereafter received regarding an alleged sexual relationship between M.G. and Appellant. In August of 2015, M.G. gave birth to J.C., of whom, as confirmed by genetic testing in November 2015, Appellant is the biological father. M.G. and Appellant denied a sexual relationship, with M.G. first claiming that she became pregnant by a peer named "Giggles," and then asserting that she inseminated herself through insertion of a condom used by Appellant.

_____

[1] The orders are dated April 20, 2016, but are time-stamped April 26, 2016. We will use the time-stamped date.

The Agency filed petitions for dependency on August 26, 2015. On November 24, 2015, after completion of genetic testing, the Agency filed an amended petition requesting a finding of abuse as to M.G., as perpetrated by Appellant, as well as a motion for aggravated circumstances as to J.C., against Appellant. Because the trial court aptly summarized the events that led the Agency to file these petitions, and related factual history, in its opinion entered June 17, 2016, we direct the reader to that opinion for further recitation and detail as to the facts of this case. (**See** Trial Court Opinion, 6/17/16, at 4-12).

The trial court held hearings on December 3, 2015, January 27, 2016, and April 20, 2016. In support of its petitions, the Agency presented the testimony of Sonja Stebbins, Lancaster City Police Lieutenant Detective; Ashley Himes, Agency caseworker; M.G.; C.C.-R., M.G.'s mother and J.C.'s maternal grandmother; Julie Stover, nurse practitioner, as an expert in reproduction; Aubrey Bond, Agency caseworker; and Dr. Robert Filer, as an expert in fertility and related endocrinology. In its April 26, 2016 order in case number 181-2015, the court adjudicated M.G. dependent, and found that she was the victim of abuse perpetrated by Appellant. By separate order entered that day in case number 180-2015, the court adjudicated J.C. not dependent, and found that aggravated circumstances existed as to him,

and against Appellant.[2]  On May 18, 2016, Appellant, through appointed counsel, filed timely notices of appeal, along with concise statements of errors complained of on appeal.  *See* Pa.R.A.P. 1925(a)(2)(i), (b).  The trial court filed an opinion on June 17, 2016.  *See* Pa.R.A.P. 1925(a)(2)(ii).  This Court consolidated the appeals *sua sponte* on June 24, 2016.

On appeal, Appellant raises the following issues for our review:

A. The [c]ourt erred in finding [Appellant] abused M.G.

B. The [c]ourt erred in the Order of Adjudication finding aggravated circumstances existed as to J.C.[]

(Appellant's Brief, at 9).

Our standard of review for dependency cases is as follows:

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law.  Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010) (citation omitted).  "The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence."  *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).

---

[2] The trial court additionally issued a third order, a permanency review order, on this date, in which it found aggravated circumstances against Appellant as to M.G.  Appellant, however, does not challenge this order and/or raise this issue on appeal.  (*See* Appellant's Brief, at 9, 14-20).

- 4 -

To adjudicate a child dependent, a trial court must determine, by clear and convincing evidence, that the child:

> is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk[.] . . .

42 Pa.C.S.A. § 6302.

In the case *sub judice*, we have examined the opinion entered by the trial court on June 17, 2016 in light of the record in this matter and are satisfied that the opinion is a complete and correct analysis regarding the finding that M.G. was the victim of abuse and Appellant was the perpetrator. We, therefore, adopt the concise, thoughtful, and well-written opinion of the trial court as dispositive of this issue. (*See* Trial Ct. Op., at 13-19).

We next address the issue of the court's finding of aggravated circumstances as to J.C. Specifically, in finding that J.C. is not dependent, the trial court found that, "under such circumstances as existed as of the date of its determination, there was not clear and convincing evidence that J.C. was a dependent child." (Trial Ct. Op., at 21). The court then made a finding of aggravated circumstances as to J.C. We are constrained to conclude that this was error.

Pursuant to 42 Pa.C.S.A. § 6341:

**(c) Finding of dependency.**—If the court finds from clear and convincing evidence that the child is dependent, the court shall

- 5 -

proceed immediately or at a postponed hearing . . . to make a proper disposition of the case.

**(c.1) Aggravated circumstances.**—If the county agency or the child's attorney alleges the existence of aggravated circumstances **and the court determines that the child is dependent**, the court shall also determine if aggravated circumstances exist. If the court finds from clear and convincing evidence that aggravated circumstances exist, the court shall determine whether or not reasonable efforts to prevent or eliminate the need for removing the child from the home or to preserve and reunify the family shall be made or continue to be made and schedule a hearing as required in section 6351(e)(3) (relating to disposition of dependent child).

42 Pa.C.S.A. § 6341(c), (c.1) (emphasis added).[3]

In other words, the statute provides that, if the trial court makes a finding of dependency, then it shall also determine the existence of aggravated circumstances. **See id.** Instantly, the trial court determined

---

[3] "Aggravated circumstances" is defined as "[t]he child or another child of the parent has been the victim of physical abuse resulting in serious bodily injury, sexual violence or aggravated physical neglect by the parent." 42 Pa.C.S.A. § 6302. "Sexual violence" is defined as:

Rape, indecent contact as defined in 18 Pa.C.S.[A.] § 3101 (relating to definitions), incest or using, causing, permitting, persuading or coercing the child to engage in a prohibited sexual act as defined in 18 Pa.C.S.[A.] § 6312(a) (relating to sexual abuse of children) or a simulation of a prohibited sexual act for the purpose of photographing, videotaping, depicting on computer or filming involving the child.

42 Pa.C.S.A. § 6302. We have held that the doctrine of in loco parentis is applicable "for purposes of defining 'parent' in the context of 'aggravated circumstances[.]'" **In re C.B.**, 861 A.2d 287, 297 (Pa. Super. 2004), appeal denied, 871 A.2d 187 (Pa. 2005).

J.C. was **not** dependent. Therefore, its inquiry should have ended there. Hence, while we are sympathetic to the trial court's attempt to protect J.C. in the future, its finding of aggravated circumstances as to him was in contravention of Pennsylvania law, and is therefore a legal nullity. Accordingly, we must vacate the court's order to the extent it found aggravating circumstances as to J.C.

Consequently, we affirm the order of the Court of Common Pleas of Lancaster County, Juvenile Division, finding M.G. to be the victim of abuse perpetrated by Appellant, on the basis of the trial court's opinion. We vacate the order of the trial court to the extent it found the existence of aggravated circumstances as to J.C., and remand to the trial court for any further proceedings.

Order as to M.G. affirmed. Order as to J.C. vacated in part and remanded. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/6/2017

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
JUVENILE DIVISION

IN THE INTEREST OF         :     Term No. CP-36-DP-180-2015
~~Jaime Cruz~~               :     FID: 36-FN-109-2015

and

IN THE INTEREST OF         :     Term No. CP-36-DP-181-2015
~~Monica Geib~~               :     FID: 36-FN-110-2015

## OPINION *SUR* APPEAL

This opinion addresses two separate but related appeals filed by ~~Jaime Cruz-Rivera~~ (hereinafter, "the Appellant").

The first appeal addresses this Court's Order of Adjudication-Child Not Dependent in the case of ~~Jaime Cruz~~ (date of birth August ~~XX~~ 2015; hereinafter, "J.C.") wherein the Court found that aggravated circumstances had been established as to the Appellant.

The second appeal addresses this Court's Order of Adjudication and Disposition-Child Dependent in the case of ~~Monica Geib~~ (date of birth March ~~X~~ 1999; hereinafter, "M.G.").

Both Orders are dated April 20, 2016. The Order in the J.C. case was entered upon the Clerk of Courts' docket on April 22, 2016. The Order in the M.G. case was entered upon the Clerk of Court's docket on April 20, 2016.[1]

---

[1] One opinion is being submitted for both appeals for the following reasons: the Court found ~~Jaime Cruz-Rivera~~ to be the perpetrator of sexual abuse upon ~~Monica Geib~~ which was the basis for the finding of aggravated circumstances with regard to ~~Jaime Cruz~~. These are the two issues stated in the Errors Complained of on Appeal, and the Court's findings as represented in

The Appellant's Notices of Appeal were timely filed on May 18, 2016.

In the M.G. case, the family within the household consists of M.G.'s biological mother, ~~Crystal Cruz-Rivera~~ (hereinafter, "C.C.-R."), her husband (and M.G.'s stepfather) ~~Jaime Cruz Rivera~~ (the Appellant), and her three children: ~~Monica Geib~~, ~~Glen Geib~~ ~~Jr.~~, and ~~Destiny Geib~~, all of whom are the biological children of ~~Glen Geib~~ (hereinafter "G.G."), who is C.C.-R.'s former husband (but who was and is not a household member). (See the Lancaster County Children and Youth Social Service Agency's Petition for Temporary Custody.)

In the J.C. case, the family consists of J.C.'s biological mother, M.G., J.C.'s biological father - the Appellant, and the child, J.C.

The Appellant, therefore, is stepfather to M.G. and is the biological father of J.C.

Adjudication/Disposition Hearings were held over the course of three days and culminated in the Orders under appeal.

At all of the hearings, C.C.-R. was present and was represented by Gina M. Carnes, Esquire, G.G. was present and was represented by Catharine I. Roland, Esquire, M.G. was present and, in her role as the mother of J.C., M.G. was represented by Daniel H. Shertzer, Jr., Esquire. In addition, M.G.'s Guardian

the two Orders are based upon a single evidentiary record.

-2-

*ad litem*, JoAnne Murphy, Esquire, was present. The Appellant was present and was represented by Caprice Hicks Bunting, Esquire. Finally, J.C.'s Guardian *ad litem*, Jeffrey S. Shank, Esquire, was present; the child J.C. was not present due to his young age.

At all of the hearings in both cases, David J. Natan, Esquire, was present as the solicitor for the Lancaster County Children and Youth Social Service Agency (hereinafter, "the Agency").

The three hearings were held on December 3, 2015, on January 27, 2016, and on April 20, 2016.

In the M.G. case, the Appellant complains on appeal that this Court erred when it ruled that M.G. is the victim of child abuse and that the Appellant is the perpetrator of such abuse.

In the J.C. case, the Appellant complains on appeal that this Court erred when it made a finding of aggravated circumstances (as that term is defined in the Juvenile Act) against the Appellant.

The Appellant is the only party to these two cases who has sought relief by appeal to the Superior Court.

# FINDINGS OF FACT

1.   M.G. was born on March 2, 1999.   (N.T. 01/27/2016 at page 5)

2.   M.G. is the mother of J.C.   (N.T. 01/27/2016 at page 6)

3.   J.C. was born on August 25, 2015, when M.G. was sixteen years of age.   (N.T. 01/27/2016 at page 6)

4.   C.C.-R. has been employed as a full-time staff member in a medical office from a time prior to when M.G. became pregnant and throughout the course of these cases.   (N.T. 01/27/2016 at pages 36-37 and at page 90)

5.   The Appellant consistently lived as a part of the same household as C.C.-R. and M.G. for a period of about ten years prior to the inception of these cases.   (N.T. 01/27/2016 at page 41)

6.   M.G. had spent every other weekend with her biological father, G.G., but during the couple of years before these cases began M.G. did not visit with G.G.   (N.T. 01/27/2016 at pages 41-42)

7.   M.G. refers to G.G. as her "bio dad", while she refers to the Appellant as "dad" and the Appellant and C.C.-R. collectively as her "parents".   (N.T. 01/27/2016 at page 11, page 18, and, by example, page 8 and page 38)

-4-

8. During the time period when M.G. became pregnant, the Appellant was responsible for supervising M.G. when M.G. was at home while C.C.-R. was at work. (N.T. 01/27/2016 at page 41)

9. The fact that M.G. was pregnant was confirmed when M.G. saw a doctor in February 2015. (N.T. 01/27/2016 at page 13)

10. After M.G. was seen by a doctor in February of 2015 and was told that she was pregnant, M.G. told C.C.-R. and the Appellant that she had been impregnated by a fellow high school student. (N.T. 01/27/2016 at pages 84-85)

11. The Agency received its initial referral in respect to M.G. on May 15, 2015. (N.T. 12/03/2015 at page 14)

12. The referent's allegation was that the Appellant, who is M.G.'s stepfather, is the biological father of M.G.'s unborn child. (N.T. 12/03/2015 at pages 14-15)

13. On June 30, 2015, the Agency received another referral that M.G. was engaging in oral sex with the Appellant. However, the Agency determined this referral to be unfounded. (N.T. 12/03/2015 at pages 32-34)

14. M.G.'s brother, ~~Nicholas Geib~~ (who had been a household member but who had gone to live with his father, G.G., before the Agency filed its Petition for Temporary Custody in respect to M.G.), was interviewed and reported that he had seen the Appellant and M.G. kissing as well as M.G. sleeping in the

-5-

Appellant's bed when C.C.-R. was sick and sleeping on the couch. (N.T. 12/03/15 at page 93)

15. Initially, during a meeting at the family home on May 15, 2015, M.G. reported to the Agency caseworker that she got pregnant after engaging in sexual intercourse with a fellow high school student whom she knew by the name of "Giggles". M.G. was unable to state where she met "Giggles", what his real name is or what he looks like, and she was unable to provide any other details about him or about their sexual encounter, including the location of the party where they had their alleged sexual encounter (or even whether it was at a house or a park) or the identity of any of the other persons who were present at the party. (N.T. 12/03/2015 at pages 17-18)

16. The Agency arranged for M.G. to participate in a forensic interview on May 26, 2015, at the Lancaster Children's Alliance. This was the first interview in which M.G. participated which was video recorded. (N.T. 12/03/2015 at page 21)

17. In all, M.G. participated in three video recorded interviews as follows: at the Lancaster Children's Alliance on May 26, 2015; with Detective Lieutenant Sonja Stebbins at the Lancaster City Bureau of Police on July 6, 2015; and again at the Lancaster Children's Alliance on September 8, 2015. (N.T.

-6-

12/03/2015 at pages 4-13, Petitioner's Exhibits 1, 2 and 3 dated 12/03/2015)

18. At the first interview of M.G. at the Lancaster Children's Alliance (on May 26, 2015), M.G. again stated that "Giggles" is the father of her then-unborn child. M.G. related that she and "Giggles" had engaged in sexual intercourse just once (at a party thrown by other high school students), and that M.G.'s pregnancy resulted from this, her first and only sexual experience for her. (Petitioner's Exhibit 1 admitted 12/03/2015)

19. During the interim between M.G.'s first Lancaster Children's Alliance interview (on May 26, 2015) and M.G.'s interview with Detective Lieutenant Stebbins (on July 6, 2015), the Agency caseworker and the Appellant engaged in several conversations in which the Appellant denied the allegations that he sexually abused M.G. (N.T. 12/3/2015 at page 23)

20. On or about July 5, 2015, which was after M.G. had been asked to meet for an interview by Lancaster City Bureau of Police Detective Lieutenant Stebbins but before such interview occurred, C.C.-R. and the Appellant had a discussion at home where they agreed that M.G. must get DNA testing to establish paternity of her then unborn child. (N.T. 1/27/2016 at page 86)

21. M.G. overheard this discussion and reacted by ranting and raving for twenty minutes. (N.T. 1/27/2016 at pages 86 and 111)

22. After M.G. calmed down, M.G. told C.C.-R. and the Appellant that she had taken their used condom and inseminated herself. (N.T. 01/27/2016 at page 86)

23. M.G. did not tell her story that she had become pregnant via self-insemination with a used condom to anyone other than C.C.-R. and the Appellant until she provided that explanation during her July 6, 2015, interview with Detective Lieutenant Stebbins at the Lancaster City Bureau of Police. (N.T. 12/03/2015 at page 74)

24. On July 6, 2015, during the course of her interview by Detective Lieutenant Stebbins at the Lancaster City Bureau of Police, M.G. stated that she had impregnated herself by inserting a condom containing semen into her vagina. According to M.G., she overheard her mother and the Appellant having sexual intercourse and had retrieved the condom they had used from the floor of their bedroom shortly after they finished having sex and had left the room. (N.T. 12/03/2015 at page 23)

25. During the July 6, 2015, interview, M.G. told the Detective she cut a hole in the tip of the condom and then squeezed its contents into her vagina. (Petitioner's Exhibit 3 admitted 12/03/2015)

26. Thereafter, the Agency implemented a safety plan which prohibited the Appellant from having any contact with M.G. or with Mother's other children. (N.T. 12/03/2015 at page 27)

-8-

27. On August 27, 2015, which was two days after J.C.'s birth, M.G. and J.C. were placed into the physical custody of the Agency. (N.T. 12/03/2015 at page 27)

28. M.G. was interviewed by the Lancaster Children's Alliance for a second time on September 8, 2015. During that interview, M.G. maintained that she was impregnated by way of her self-insemination through inserting a used and discarded condom into her vagina. However, M.G.'s precise description of how she accomplished this was at variance with the description she gave to Detective Lieutenant Stebbins on July 6, 2015, as M.G. now claimed that the condom was "halfway open" when she inserted it (and made no mention of having cut off the tip and squeezing it). (Petitioner's Exhibit 3 admitted 12/03/2015)

29. Julie Stover, who is a registered nurse practitioner employed by Lancaster General Health and by the Lancaster Children's Alliance and who has long experience working with children and youth who have been victims of sexual abuse, was present during the September 8, 2015, interview of M.G. at the Lancaster Children's Alliance. (N.T. 01/27/2015 at pages 162-167)

30. Ms. Stover attempted to glean additional details about how M.G. became pregnant from M.G. but M.G. shut down and was non-responsive. (N.T. 01/27/2015 at pages 185-186)

31. Ms. Stover was qualified as an expert in the field of reproduction. (N.T. 01/27/2016 at pages 162-176; Petitioner's Exhibit 5 of 01/27/2016)

32. Ms. Stover's opinion was that M.G. could not have gotten pregnant in the manner she described with the insertion of the discarded condom into her vagina. (N.T. 01/27/2015 at page 185)

33. Ms. Stover's opinion is that M.G. became pregnant as a result of child sexual abuse. (N.T. 01/27/2015 at page 185)

34. On or about November 9, 2015, genetic testing confirmed that the Appellant is the biological father of J.C. (Petitioner's Exhibit A attached to the Agency's Amended Petition for Custody filed November 24, 2016).

35. At the hearing held on January 27, 2016, M.G. admitted that she had lied during the Children's Alliance interview on May 26, 2015, when she stated that the Appellant is not the biological father of the Child. (N.T. 01/27/2016 at pages 8-9)

36. M.G. further went on to testify that on the night she had inseminated herself she had placed the used condom over her index and middle fingers and had then inserted it into her vagina. (N.T. 01/27/2016 at pages 31-32)

37. As of the December 3, 2015, hearing, M.G. had informed the Agency caseworker that she wanted no contact with her biological father, G.G. (N.T. 12/03/2015 at page 46)

-10-

38. M.G. gave J.C. the same name as the Appellant. (N.T. 01/27/2016 at page 43)

39. M.G. stated that she had decided to have a baby to make C.C.-R. happy because C.C.-R. could not have any more children. (N.T. 01/27/2016 at pages 46 and 58)

40. On January 26, 2016, the Appellant was charged criminally as a result of the inappropriate sexual contact with M.G.[2] (N.T. 01/27/2016 at page 101)

41. On January 27, 2016, M.G. testified that she loves the Appellant and that she was upset that the Appellant was incarcerated. (N.T. 01/27/2016 at page 70)

42. Robert B. Filer, M.D., was called as a witness on behalf of the Agency. (N.T. 04/20/2016 at page 37)

43. Dr. Filer was qualified as an expert with regard to fertility and related endocrinology. (N.T. 04/20/2016 at page 38)

44. Dr. Filer offered his opinion that assuming a hypothetical factual setting which accepts as true the version of facts and conditions rendered by M.G. which is most likely to result in pregnancy, the best chance of getting pregnant under

---

[2] The Court takes judicial notice that Jamie (*sic*) Cruz-Rivera, d.o.b. 10/04/1978, was charged on January 26, 2016, with violations of 18 Pa.C.S.A. § 3122.1 §§ B Statutory Sexual Assault: 11 Years Older (F1), 18 Pa.C.S.A. § 6301 §§ (A)(1)(ii) Corruption of Minors - Defendant Age 18 or Above (F3), and 18 Pa.C.S.A. § 6318 §§ (A)(1) Unlawful Contact with Minor - Sexual Offenses (F3). *See* Docket Number: MJ-02101-CR-0000028-2016.

-11-

such facts and conditions would be less than one percent. (N.T. 4/20/2016 at page 51)

45. The Court asked M.G. to tell the story of the fateful night that she got pregnant in reverse order, from the end to the beginning. (N.T. 04/20/2016 at pages 60-61)

46. M.G. was unable to relate any portion of any version of her story in reverse order. (N.T. 04/20/2016 at pages 61-68).

47. M.G. was unable to state a reason why she gave two distinct versions of how she applied the used and discarded condom to herself (those being the version in which the condom was "halfway open" and was placed over her index and middle fingers inside-out and then inserted it and the version where M.G. cut a hole in the tip of the condom, inserted it and squeezed out the contents). (N.T. 04/20/2016 at pages 68-69)

48. M.G. stated that the correct method of self-insemination she utilized was by turning the used condom inside out and inserting it in herself. (N.T. 04/20/2016 at page 69)

49. By the time of the final hearing, April 20, 2016, Mother indicated she would be filing for divorce from Father/Stepfather. (N.T. 04/20/2016 at page 26)

## CONCLUSIONS OF LAW

1. In respect to the case of M.G., the record contains clear and convincing evidence that M.G. is a victim of child

-12-

abuse as defined at 23 Pa. C.S.A. § 6303 and that the Appellant is the perpetrator of such child abuse upon M.G.[3]

2. In respect to the case of J.C., Aggravated Circumstances as defined at 42 Pa. C.S.A. § 6302 were established by clear and convincing evidence with regard to the Appellant due to the fact that a child of the Appellant (specifically, M.G.) other than J.C. is the victim of sexual abuse perpetrated by the Appellant.

## DISCUSSION

### FINDINGS IN RESPECT TO CHILD ABUSE

### AND THE PERPETRATOR OF CHILD ABUSE

Child abuse is defined in the Child Protective Services Law (the "CPSL"), 23 Pa. C.S.A. § 6303 (b.1), in relevant part, as follows:

> Child abuse.–The term "child abuse" shall mean intentionally, knowingly or recklessly doing any of the following:...
>
> (4) Causing sexual abuse or exploitation of a child through any recent act...

Judicial findings in respect to: (1) whether child abuse which supports a finding of dependency has occurred; and, (2) if child abuse has occurred, the identity of the perpetrator of such

---

[3] Due to the fact that M.G. had been in placement for a substantial period of time, a permanency review was conducted as an integrated part of the hearings. The Court issued a Permanency Review Order dated April 20, 2016, and filed April 26, 2016, in which the Court found that aggravated circumstances existed as to the Appellant. The Appellant did not raise any issue as to this finding in either of his appeals to the Superior Court.

-13-

abuse, are subject to a "clear and convincing evidence" standard of proof. 23 Pa. C.S.A. 6341 (c); *In Re L.Z.*, 111 A.3d 1164 (Pa. 2015). Clear and convincing evidence must be established to support a finding of Aggravated Circumstances. Clear and convincing evidence is testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue. *In Re K.M.*, 53 A.3d 781 (Pa.Super. 2012).

A further consideration is the presumption created under 23 Pa.C.S.A. § 6381 (d), which reads, in relevant part, as follows:

> Evidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts...of the parent or other person responsible for the welfare of the child shall be prima facie evidence of child abuse by the parent or other person responsible for the welfare of the child.

In the present case, it is a matter of scientific fact that the Appellant is the biological father of J.C. M.G.'s pregnancy with the Appellant's child, J.C., "would ordinarily not exist except by reason of" the Appellant's acts.

There were no witnesses who testified as to the act which led to J.C.'s conception other than M.G.

The Appellant offered no testimony to rebut the statutory presumption which arises from the fact that the child, M.G.,

-14-

became pregnant by her much older stepfather, which circumstance by necessity falls within the concept of "sexual abuse".

M.G. offered numerous inconsistent stories in respect to the manner in which she became pregnant. Her stories were notable for an absence of much detail and also for inconsistencies in one or more critical details with each of her several iterations. Also of significance is that M.G. was unable to respond at all when the Court gave her an ample opportunity to tell the true story of what happened on the fateful night when she became pregnant but to do so by telling the story in a reverse order.[4]

M.G.'s estrangement from her own biological father, G.G., was established through several sources. The Appellant had the opportunity to engage in a sexual relationship with M.G., in that he was responsible for supervising her while she was at home and C.C.-R. was at work. M.G. admitted her affection for the Appellant. She gave her child J.C. the same name as the Appellant. She acknowledged her personal distress caused by the Appellant's incarceration. Clearly, M.G. had motives to protect the Appellant. Each of these nuances are individually indicia of a potential absence of candor on M.G.'s part, or provide reasons

---

[4] The undersigned attended the seminar presented at the Pennsylvania Conference of State Trial Judges Mid-Annual meeting in February, 2016, entitled "Verum or Mendacium" presented by Prof. Dr. Aldert Vrij of the University of Portsmouth, Great Britain. Dr. Vrij is a recognized expert in the field of lie detection. One of the points he made is that liars tend to omit detail, particularly any detail which is subject to verification, from their stories. Dr. Vrij also suggested that many liars find it difficult to relate their stories in reverse order.

for same. Viewed cumulatively, these nuances point strongly to the conclusion that none of varying renditions which M.G. offered is credible. "The trial court is free to believe all, part, or none of the evidence presented and it is likewise free to make all credibility determinations and resolve conflicts in the evidence". *In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004)

Once this Court has rejected the story that M.G. became pregnant by way of self-insemination, then the obvious manner in which she became pregnant is by way her engaging in sexual intercourse with the Appellant.

The expert testimony of Robert B. Filer, M.D., was credible and compelling, and is supportive of the Court's ultimate conclusion regarding the manner that J.C.'s conception was achieved. Firstly, Dr. Filer's credentials as an expert in human reproduction are beyond reproach. His testimony established that there is an infinitesimal chance that M.G. could have been impregnated by inserting a used condom containing the Appellant's semen.

The testimony of Julie Stover, R.N.P., while not as compelling as that of Dr. Filer (as her conclusion rests, at least in part, upon her best sense of the situation based upon her experience with child sexual abuse cases rather than upon the science of human reproduction) is none the less supportive of the

conclusion which this Court reached - that J.C. was conceived through direct sexual contact between the Appellant and M.G.

In addition, there are the reports of physical contact between the Appellant and M.G. which are consistent with the existence of a sexual relationship between them. Standing alone, these reports would be insufficient proof of that relationship. However, in the context of the other cumulative evidence, they bolster the Court's conclusion that such a relationship did exist.

Under the CPSL at 23 Pa.C.S.A. § 6303, the following is included, *inter alia*, within the definition of "sexual abuse or exploitation":

...(ii) Statutory sexual assault as defined in 18 Pa.C.S. § 3122.1;...and,

...(xii) Unlawful contact with a minor as defined in 18 Pa.C.S. § 6318.

18 Pa.C.S. § 3122.1 (b) states that "[a] person commits a felony of the first degree when that person engages in sexual intercourse with a complainant under the age of 16 years and that person is 11 or more years older than the complainant and the complainant and the person are not married to each other." Each of the elements of this offense are present in the instant case.

18 Pa.C.S. § 6318 (a) states, in relevant part, that:

"A person commits an offense if he is intentionally in contact with a minor...for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth: (1) Any of the offenses enumerated in Chapter 31 (relating to sexual offenses)..." Again, each of the elements of this offense are present in the instant case.

Even in a criminal matter where proof beyond a reasonable doubt is the evidentiary standard, it is well established that the standard may be satisfied where only circumstantial evidence is offered. "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Commonwealth v. Andrulewicz*, 911 A.2d 162, 165 (Pa.Super. 2006), citing *Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa.Super 2004). For further exposition of the concept, the Court reviewed the Pennsylvania Suggested Standard Criminal Jury Instructions and found the following:

> Circumstantial evidence alone may be sufficient to prove the defendant's guilt. If there are several separate pieces of circumstantial evidence, it is not necessary that each piece standing alone separately convince you of the defendant's guilt beyond a reasonable doubt. Instead, before you may find the defendant guilty, all the pieces of circumstantial evidence, when considered together, must reasonably and naturally lead to the conclusion that the defendant is guilty and must convince you of the defendant's guilt beyond a reasonable doubt. In other words, you may find the defendant guilty based on circumstantial

-18-

evidence alone, but only if the total amount and quality of that evidence convince you of the defendant's guilt beyond a reasonable doubt. Pa. SSJI (Crim) 7.02A 4.

In the present case, there is the direct scientific evidence that the Appellant is the biological father of J.C. There is Dr. Filer's expert opinion that it is highly unlikely conception could have occurred through any of the methods described by M.G. The balance of the evidence is circumstantial in nature.

In reviewing the totality of the evidence against the highly stringent standard of proof beyond a reasonable doubt, this Court is satisfied that the evidence is sufficient to meet that test and is more than sufficient to far exceed that degree of proof necessary to meet the "clear and convincing evidence" standard which is applicable in this case.[5]

## FINDING OF AGGRAVATED CIRCUMSTANCES

The Court found that "aggravated circumstances" had been proven as to the Appellant due to its finding that the Appellant had sexually abused M.G.

The relevant definition of "aggravated circumstances" applicable to the instant matter is..." (2) ...another child of

---

[5] After the record was closed in these proceedings, according to the Agency's brief in the appeal, M.G. has admitted that she and the Appellant had a sexual relationship. The Answer To Statement Of Matters Complained Of On Appeal filed on behalf of C.C.-R. indicates the same.

-19-

the parent has been the victim of...sexual violence...by the parent". 23 Pa. C.S.A. § 6302. (Irrelevant material omitted.)

The Appellant is not the biological father of M.G., but he is her stepfather. The Superior Court has established that for the purpose of defining the term "parent" in the context of aggravated circumstances, the doctrine of *in loco parentis* may be appropriately applied. *In the Interest of C.B. and A.L.*, 861 A.2d 287 (Pa.Super. 2004). The Appellant stood in the relationship of a parent to M.G. by assuming the obligations incident to the parental relationship. In the case of J.C., M.G. is "another child of the parent" (the Appellant) who "has been the victim of sexual violence by the parent."

Clear and convincing evidence must be established to support a finding of Aggravated Circumstances. 42 Pa.C.S.A. § 6341 (c.1). Again, "clear and convincing evidence" is testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue. *In Re K.M.*, 53 A.3d 781 (Pa.Super. 2012).

The same evidence which supports the Court's findings in respect to child abuse more than amply supports its finding that aggravated circumstances exist in respect to the actions of the Appellant vis-à-vis M.G. The analysis of the evidence set forth in the first part of the discussion above (regarding the Court's

findings in respect to child abuse) is applicable in this instance as well.

The Appellant may argue that it is improper for this Court to make a finding of aggravated circumstances in the context of an adjudication order where the subject child is found to not be dependent, as occurred here. It is axiomatic that the finding of dependency, or the lack thereof, must be based upon the facts and circumstances as they exist when a court makes its ruling on the issue. As of the date of the final hearing in this case (April 20, 2016), the circumstances had evolved significantly from those which existed as of the time the Agency brought its petition. The Appellant had been incarcerated. C.C.-R. had indicated her intention to divorce the Appellant. J.C. had been in M.G.'s care since his birth, and there was every indication that he would be safe if he were to remain in her care. The Agency, while arguing that both M.G. and J.C. were dependent, was supportive of its retaining only legal custody of M.G., with her physical custody to be returned to C.C.-R. and with J.C. to remain with M.G. (N.T. 04/20/2016 at pages 75-79) M.G.'s counsel argued persuasively that M.G. herself was a ready, willing and able parent (albeit with the supports in place for her in her mother C.C.-R.'s home). The Court found that, under such circumstances as existed as of the date of its determination, there was not clear and convincing evidence that J.C. was a dependent child and

-21-

issued its Order so finding, but the Court also made its finding that clear and convincing evidence, as noted above, existed which established aggravated circumstances as to the Appellant.

It may be argued that the Court's finding of aggravated circumstances is a nullity where there is no finding that a child is dependent. It may be further argued that without an ongoing case, a finding of aggravated circumstances accompanied by a finding that the Agency need not offer a plan for reunification serves no practical purpose.

In the ordinary course of events, a court will address the issue of aggravated circumstances subsequently to making its finding that a child is dependent. See *In the Interest of R.P.,* 957 A.2d 1205 (Pa.Super. 2008).

The Court has attempted to find appellate authority on the issue of whether a court may make a finding of aggravated circumstances where there is no finding in the same case that a child is dependent, but has been without success.

The Court is aware of the provision in 42 Pa.C.S.A. § 6341 (c.1) which provides that:

> If the county agency or the child's attorney alleges the existence of aggravated circumstances and the court determines that the child is dependent, the court *shall* also determine if aggravated circumstances exist. If the court finds from clear and convincing evidence that aggravated circumstances exist, the court shall determine whether or not reasonable efforts to prevent or eliminate the need for removing the child from the home or to preserve and reunify the family shall be made or continue to be made and schedule a

-22-

hearing as required in section 6351(e)(3) (relating to disposition of dependent child). (Emphasis supplied.)

The legislature's choice of the word "shall" indicates that it is mandatory for a court to rule on the issue of whether aggravated circumstances exist where a child has been determined to be dependent and motion for the finding has been made. A finding of aggravated circumstances is a legal conclusion drawn by a court having jurisdiction and is based upon the facts as found by the court. The Juvenile Act defines what constitutes aggravated circumstances and states when a court is *compelled* to make a legal determination upon the issue. The Juvenile Act does not exclude the finding of aggravated circumstances by a court where, as in the instant case, the issue has been fully and fairly litigated and there is a factual basis proven by clear and convincing evidence which supports a finding of aggravated circumstances. Rather, a court should be permitted to make the finding where, as here, the court is not mandated to make the determination by the strict terms of the statute but the finding is nonetheless appropriate and in the interest of the subject child and of justice.

The Court is highly mindful of its responsibility to enter an order of "disposition best suited to the protection and physical, mental and moral welfare of the child." 24 Pa.C.S.A. § 6351 (a). Under the circumstances, the Court has concern that in the absence of a finding of aggravated circumstances, the

-23-

Appellant's chances of his eventually reuniting with J.C. will be enhanced. That eventuality would be contrary to the protection and physical, mental and moral welfare of J.C. A finding of aggravated circumstances carries with it collateral consequences which the Court believes are appropriate in this case and which the Appellant should not escape only because J.C. is now in a safe place with M.G. Those consequences may include, but are not limited to, forming an appropriate consideration for a court in the future should it be faced with the issue of whether to grant the Appellant a plan for reunification. The finding may also be a significant part of a court's consideration of the safety of a child in a child custody case where the Appellant is a party or is a household member of a party. See 23 Pa.C.S.A. § 5329.1. As such, there is ample legal basis and good reason to sustain this Court's finding of aggravated circumstances.

## CONCLUSION

The Appellant's appeals are without merit. The Order of Adjudication and Disposition-Child Dependent with regard to Monica Geib dated April 20, 2016, and the Order of Adjudication-Child not Dependent with regard to Jaime Cruz dated April 20, 2016, should be affirmed.

I certify this document to be filed in the Lancaster County Office of the Clerk of the Courts.

Dated: 17 June 2016
Jacquelyn E. Pfursich
Clerk of Courts

**BY THE COURT:**

Jeffrey J. Reich, Judge

Copies to:

David J. Natan, Esquire, Counsel for Children and Youth Agency
Gina M. Carnes, Esquire, Counsel for C.C.-R.
Catharine I. Roland, Jr., Esquire, Counsel for G.G.
JoAnne Murphy, Esquire, Guardian *ad litem* for M.G.
Daniel S. Shertzer, Jr., Esquire, Counsel for M.G.
Caprice Hicks Bunting, Esquire, Counsel for the Appellant
Jeffrey S. Shank, Esquire, Guardian *ad litem* for J.C.

CLERK OF COURTS
2016 JUN 17 PM 2: 42
LANCASTER COUNTY, PA

-25-