J-S79022-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DARON BROWN | |
| Appellant | No. 3069 EDA 2015 |

Appeal from the Judgment of Sentence October 6, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0004848-2014

BEFORE:  GANTMAN, P.J., MOULTON, J., and MUSMANNO, J.

MEMORANDUM BY MOULTON, J.:          **FILED FEBRUARY 06, 2017**

Daron Brown appeals from the October 6, 2015 judgment of sentence entered by the Philadelphia County Court of Common Pleas following his convictions for possession of cocaine with intent to deliver ("PWID") and knowingly or intentionally possessing a controlled substance.[1]  We affirm.

The trial court[2] summarized the relevant factual history of this matter as follows:

> On February 20, 2014, . . . Daron Brown[] was arrested and was charged with [PWID] and knowingly or intentionally possessing a controlled substance for events

---

[1] 35 Pa.C.S. §§ 780-113(a)(30) and 780-113(a)(16), respectively.

[2] The Honorable Jeffrey P. Minehart authored the trial court's Pennsylvania Rule of Appellate Procedure 1925(a) opinion because the Honorable Vincent N. Melchiorre, who presided over Brown's case, was no longer on the bench.

which occurred at or near the 5600 block of Market Street in the City and County of Philadelphia.

* * *

[At a suppression hearing held on July 2, 2015,] Officer Maurici Acevedo testified that on February 20, 201[4], at approximately 1:30 a.m., he and his partner, Officer Nguyen (first name not given), were on routine patrol traveling westbound on Market Street when they observed [Brown] and what appeared to be two male juveniles. Officer Nguyen pulled the vehicle over and as Officer Acevedo was exiting the patrol vehicle he told the three males to "Stop."[3] The two males that appeared to be juveniles ran westbound and [Brown] ran eastbound toward 56th Street. Officer Acevedo pursued [Brown] on foot and observed him reach into the front pocket of his hoodie with his right hand, take out a clear baggie, and throw it to the ground. At the corner of 56th and Market Streets, [Brown] slipped on ice and fell backwards. Officer Acevedo apprehended [Brown] after which [he] retrieved the baggie he had observed [Brown] throw. Eleven (11) orange-tinted Ziploc bags and thirty-five (35) red-tinted bags were recovered from the baggie. A search incident to arrest recovered One Hundred Seventy-Two ($172.00) Dollars. (N.T. 7/2/15, pp. 4-9). According to Officer Acevedo, he and his partner stopped because he thought the two males were juveniles and it was one-thirty in the morning (almost 2 hours past curfew). He also stated that 56th and Market is a well known drug corner in the 19th District and there have been some shootings. (N.T. 7/2/15, pp. 10-12). The Motion to Suppress was denied.

A waiver trial was held before Judge Melchiorre on July 28, 2015 wherein Officer Acevedo testified as he did at the suppression hearing on July 2, 2015. (N.T. 7/28/15, pp. 9-12). After a stipulation by and between counsel that

_____

[3] Officer Acevedo testified that he was going to stop the group to inquire whether Brown was the guardian or parent of the two juveniles, as 1:30 a.m. was past the Philadelphia city curfew for minors. N.T., 7/2/15, at 10.

Police Officer Tony Morrone is an expert in the field of narcotics packaging and delivery, Officer Morrone testified that he was of the opinion that the drugs seized from [Brown] were possessed with the intent to deliver and not for personal use. He based this opinion on the way the drugs were packaged (as single, $5.00 packets) and by the way they were discarded. Additionally, Officer Morrone stated that [Brown] was not in possession of any drug paraphernalia. Officer Morrone opined that if these drugs were for personal use as argued by [Brown], they would have been packaged in bulk as opposed to the individual packaging found in the discarded baggie and [Brown] would have had some type of paraphernalia. Moreover, [Brown] would have to be a heavy cocaine user to have purchased forty-six (46) individual packets of crack-cocaine instead [of] bulk amount.[4] (N.T. 7/28/15, pp. 14-23).

[4] Officer Morrone also testified that the packets (3.5 grams) recovered from [Brown] had a value of approximately $230.00; that if [Brown] was a heavy user, monetary-wise, he could have purchased 3.5 grams of crack-cocaine anywhere in the city for [between] $120.00 and $140.00. (N.T. 7/28/15, pp. 22-23).

On behalf of [Brown], his sister, Dorsea Jameson, testified that she had given [Brown] about $60.00 (in small bills from her bartending tip money) the day before he was arrested in this matter. (N.T. 7/28/15, pp. 24-25). On cross-examination, Ms. Jameson conceded that she would not have given her brother money for drugs and she was not aware of any prior drug use. (N.T. 7/28/15, p. 26).

Tina Zimmett, [Brown's] mother, testified that she had given her son $60.00 sometime that week to paint her bathroom since he was not working at the time. (N.T. 7/28/15, pp. 27-28). On cross-examination, Ms. Zimmett stated that she also would not have given her son money for drugs and was not aware of any prior drug use. (N.T. 7/28/15, pp. 28-29).

Next, David Neff was accepted as an expert in drug analysis, distribution, and use. (N.T. 7/28/15, pp. 29-35).

It was Mr. Neff's opinion, based on the totality of the circumstances and to a reasonable degree of professional certainty that the drugs in [Brown's] possession were for personal use and not for distribution despite their packaging. He based this opinion in part on the fact that [Brown] was walking with two other individuals and not standing on a corner; that the baggie was knotted thereby preventing easy access to the drugs; Officer Acevedo was on routine patrol, he was not on a stakeout; [Brown] was not a target of any investigation; and there was no radio calls about drug sales on the street prior to the officers pulling over. While Mr. Neff agreed that the amount of drugs possessed by [Brown] was more than what an average person would have at one time, he opined that a person with a significant drug habit and economic wherewithal could use that amount of crack-cocaine in one day. (N.T. 7/28/15, pp. 35-38). [Brown] did not testify.

Opinion, 3/4/16, at 1-4 (some footnotes omitted).

Following trial, Brown was found guilty of both charges. On October 6, 2015, the trial court sentenced Brown to 2 to 4 years' incarceration followed by 3 years' probation for the PWID conviction, with no further sentence for the conviction for knowingly or intentionally possessing a controlled substance. On October 16, 2015, Brown filed a timely notice of appeal.

Brown raises the following issues on appeal:

1. Did not the lower court erroneously deny appellant's motion to suppress physical evidence where police seized appellant without reasonable suspicion or probable cause, and where appellant's flight and the recovery of illegal drugs and money was the fruit of an unlawful stop?

2. Was not the evidence insufficient to sustain appellant's conviction for possession with the intent to deliver a controlled substance where appellant never delivered a controlled substance nor was there sufficient evidence of any intent to do so?

Brown's Br. at 4.

We first address Brown's claim that the trial court erroneously denied his motion to suppress physical evidence recovered by the police, including a baggie containing 46 packets of cocaine and $172.00 in cash. Brown argues that the police "did not have reasonable suspicion to stop or probable cause to arrest" him. *Id.* at 10. Brown further argues that the trial court erred in finding that he was subject to a "mere encounter" with police, and alleges that he was in fact subject to "a seizure pursuant to the Fourth and Fourteenth Amendments of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution." *Id.* at 11.

In reviewing the denial of a suppression motion, we must determine:

> whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (internal quotations and citations omitted).

The law recognizes three levels of interaction between police officers and citizens: (1) a mere encounter; (2) an investigative detention; and (3) a custodial detention. *See Commonwealth v. Downey*, 39 A.3d 401, 405 (Pa.Super. 2012). This Court has previously discussed the requirements for police at each level:

> The first of these [interactions] is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Id.* (citation omitted). We analyze whether a seizure has occurred pursuant to the following standard:

> To guide the crucial inquiry as to whether or not a seizure has been effected, the United States Supreme Court has devised an objective test entailing a determination of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave. In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained. In making this determination, courts must apply the totality-of-the-circumstances approach, with no single factor dictating the ultimate conclusion as to whether a seizure has occurred.

*Id.* (citation omitted).

Brown argues that he was seized when the officers pulled over their patrol car, got out, and told him (and his companions) to "stop" as he was walking down the street. Brown's Br. at 12. He claims that Officer Acevedo issued a "clear directive" and a "clear show of force" such that from "the totality of the circumstances, it is apparent that a reasonable person would not feel free to ignore the officer's command to 'stop' in this situation." *Id.* at 13-14. Brown also contends that the fact the interaction occurred in a high-crime area late at night made it reasonable for him to believe a seizure was taking place. *Id.* at 14.

We are guided here by this Court's decision in **Commonwealth v. Brown**, 904 A.2d 925 (Pa.Super. 2006), which involved facts quite similar to those we address here. In that case, the appellant challenged the trial court's denial of a motion to suppress a bag of cocaine recovered following a police chase. The appellant fled after a police officer, who had observed him walking down an alley, said "stop."[4] *Id.* at 929. Although the officer had been patrolling the area for drugs in an unmarked car and was not in uniform, testimony established that at the time he told the appellant to stop, he was clearly identified as a police officer. *Id.* After apprehending the appellant following a chase, the police retraced his path and recovered a

_____

[4] The officer testified that he "thought Appellant resembled somebody that had an active county warrant, and he intended to conduct a pedestrian stop to inquire about [the appellant's] identity and what he was doing in the area at that time of the evening." **Brown**, 904 A.2d at 929.

clear plastic bag containing cocaine. *Id.* We rejected the premise that the mere use of the word "stop" amounted to a seizure by agreeing with the trial court's observation that "there was no pre-flight seizure." *Id.* at 930. The ultimate seizure of drugs discarded during the chase was not subject to suppression because the appellant's unprovoked flight in a high crime area established a reasonable suspicion to believe that criminal activity was afoot to allow for a *Terry*[5] stop. *Id.* at 930-31.

Our Supreme Court has recognized the challenges presented by the "free to leave" test for determining whether a particular police-citizen encounter rises to the level of an investigative detention:

> [M]ost "responsible" members of society would never feel free to ignore police or terminate any encounter with them, regardless of context, whether their reason be morals, civility, or respect for the badge. However, the mere fact of being a police officer does not constitute coercion that rises to the level of constitutional impropriety. Regardless of a responsible person's perception, it is conduct and circumstance beyond the officer's inherent authority that converts an interaction into more than a mere encounter.
>
> Although the reasonable person test may not always be empirically satisfying, the standard, which evolved from cases following *Terry v. Ohio*[. . .], was designed as a means to determine whether a seizure occurred, in circumstances apart from those involving physical restraint. *See United States v. Mendenhall*, 446 U.S. 544, 553–54, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (citations omitted); [*Michigan v. Chesternut*, 486 U.S.

---

[5] *Terry v. Ohio*, 391 U.S. 1 (1968).

> 567,] 573–74, 108 S.Ct. 1975 [(1988)] (citations omitted); [**INS v. Delgado**, 466 U.S. 210,] 215–17, 104 S.Ct. 1758 [(1984)] (citations omitted). The test to determine whether a seizure occurred has nonetheless remained the same, and the ultimate inquiry hinges on whether an officer "has in some way restrained the liberty of a citizen[.]" **Terry**, at 19 n. 16[. . .].

**Commonwealth v. Lyles**, 97 A.3d 298, 306 n.4 (Pa. 2014).

Here, the suppression court found that Brown was not subject to a seizure because Officer Acevedo only made "a simple request to stop," which left Brown (and the others) "free to continue walking away."   N.T., 7/2/15, at 17; **see In re D.M.**, 781 A.2d 1161, 1162, 1165 (Pa.Super. 2001) (addressing a situation in which the officer "told appellant to come over," stating that "the police may approach anyone in a public place to talk to him, without any level of suspicion, but the citizen has a right to ignore the police and go about his business. . . .   In the instant case, at the time the police initially approached the appellant it was unclear whether the police intended to do anything other than talk to him.   Thus, the initial approach did not need to be justified by any level of suspicion. . . .") (internal quotations and citations omitted).   The suppression court reasonably found that, under the totality of the circumstances and despite the use of the word "stop," there was not the sort of "conduct and circumstance beyond the officer's inherent

authority" that converted Officer Acevedo's initial approach to Brown and his companions into more than a mere encounter.[6]

Even if Officer Acevedo's initial actions rose to the level of an investigative detention, the stop was supported by reasonable suspicion.[7] As Officer Acevedo testified, the two males he observed with Brown appeared to be juveniles, and it was past curfew at the time.[8] Accordingly, he had reasonable suspicion to conduct an investigative detention to determine whether the juveniles violated curfew. Furthermore, Officer Acevedo was free to question Brown to determine whether he was the juveniles' parent or guardian. Because the curfew does not apply if the "minor is accompanied by a parent," 10 Phila. Code § 10-303, Brown's relationship to the juveniles was essential to determining whether a curfew violation had taken place. For all the foregoing reasons, we conclude that the trial court properly denied Brown's motion to suppress.

_____

[6] The court further found that Brown's subsequent "unprovoked flight [was] indicia for reasonable suspicion" and the police were free to pursue him. N.T., 7/2/15, at 17. We note that Brown does not challenge this conclusion, which is fully supported by the record.

[7] "We are not bound by the rationale of the trial court, and may affirm on any basis." *In re Jacobs*, 15 A.3d 509, 509 n.1 (Pa.Super. 2011).

[8] The Philadelphia curfew ordinance prohibits minors from being in a public place on a weekday during the school year from 9:00 p.m. (if under 13 years old) or 10:30 p.m. (if aged 13 to 17 years old) to 6:00 a.m. the following day. 10 Phila. Code § 10-303.

Next, we address Brown's claim that the Commonwealth failed to present sufficient evidence to support his PWID conviction. Brown argues that: he was not engaging in any drug sales or transactions when he was arrested; the drugs found on him could have been for personal use; and there was insufficient evidence that he possessed the cocaine with intent to deliver. Brown's Br. at 16-17.

We apply the following standard when reviewing a sufficiency of the evidence claim: "[W]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Lehman*, 820 A.2d 766, 772 (Pa.Super. 2003) (quoting *Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa.Super. 2001)). In applying this standard, "we may not weigh the evidence and substitute our judgment for the fact-finder." *Id.* Further, "the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Id.* Moreover, "[a]ny doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Id.* "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Id.* In applying the above test, we must evaluate the entire

record. *Id.* Further, "the trier of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Lehman,* 820 A.2d at 772 (quoting *DiStefano*, 782 A.2d at 582).

To uphold a PWID conviction:

> the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a controlled substance and did so with the intent to deliver it. The intent to deliver may be inferred from an examination of the facts and circumstances surrounding the case. Factors which may be relevant in establishing that drugs were possessed with the intent to deliver include the particular method of packaging, the form of the drug, and the behavior of the defendant.

*Commonwealth v. Aguado*, 760 A.2d 1181, 1185 (Pa.Super. 2000) (*en banc*).

Viewing the evidence in the light most favorable to the Commonwealth, we conclude that there was sufficient evidence to support Brown's PWID conviction. Brown does not contest that he possessed cocaine. Furthermore, Officer Tony Morrone, an expert in the field of narcotics packaging and delivery as stipulated by the parties, *see* N.T., 7/28/15, at 14, testified that Brown possessed the cocaine with intent to distribute and not for personal use based not only on quantity but also on the way it was packaged and discarded as well on as the absence of drug-use paraphernalia in Brown's possession. *Id.* at 16. The trial court credited this testimony; that Brown presented contrary evidence is irrelevant to the

- 12 -

sufficiency analysis. There was sufficient evidence from which the trial court as fact-finder could infer intent to deliver. ***Aguado***, 760 A.2d at 1185.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/6/2017