J-S47009-17
J-S47010-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CLINTON BROWN | |
| Appellant | No. 1046 EDA 2016 |

Appeal from the Judgment of Sentence August 13, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0004946-2014

*****

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CLINTON BROWN | |
| Appellant | No. 3151 EDA 2015 |

Appeal from the Judgment of Sentence August 13, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0004944-2014

BEFORE:  LAZARUS, J., MOULTON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY LAZARUS, J.:              **FILED AUGUST 24, 2017**

Clinton Brown appeals from his judgments of sentence[1] entered in the Court of Common Pleas of Philadelphia County, following his conviction for robbery,[2] conspiracy to commit robbery,[3] and conspiracy to commit aggravated assault.[4] Upon review, we affirm.

Sharday Williams testified that on January 30, 2014, she and her boyfriend, Derrick Moye, left Moye's house and were approaching her car when Brown approached her from behind, snatched her wallet, and started running. When Moye started to chase after Brown, Rasheed Hall stepped out from in front of a parked car and fired one shot into Moye's chest from approximately one foot away. Brown and Hall then fled together on foot, running in the same direction. When the police arrived, Williams described the assailant who stole her wallet as a black male in his twenties who was six feet and one inch tall, with a thin build and brown complexion, and wearing a black hoodie and black pants. Williams described the shooter as wearing a black jacket with a "Dickies" brand logo on the front and blue pants.

_____

[1] This Court has consolidated these appeals, *sue sponte*, pursuant to Pa.R.A.P. 513.

[2] 18 Pa.C.S. § 3701.

[3] 18 Pa.C.S. § 903.

[4] *Id.*

Philadelphia Police Officer Matthew Lally testified that on January 30, 2014, he was working in the neighborhood where the robbery occurred when he received information about the shooting and robbery and received a "flash" description of one of the assailants. The flash information described one assailant as a black male in his twenties with a thin build, facial tattoos, and a black hoodie. Based on his experience as an officer for the 39th Police District for ten years, and his numerous interactions with Brown during that time, Officer Lally knew that Brown matched the flash description. Officer Lally went to Brown's home and spoke with his mother. While there, Brown called his mother, and Officer Lally got on the phone and asked Brown where he was. Brown claimed to be with his girlfriend in West Philadelphia. Officer Lally left the house, and continued searching for Brown. Approximately twenty to thirty minutes later, Officer Lally found Brown, together with Hall and a third man, several blocks away.

Williams was brought to the street where Brown and Hall had been detained. She identified Brown as the one who had robbed her and Hall as the one who had shot Moye. Williams testified that her identification of them was based solely on their clothing. Brown and Hall were then taken into custody, and their cell phones were confiscated during a search incident to arrest. Although Hall's phone was locked, investigators secured access to Brown's phone. The call logs of Brown's phone listed multiple calls to and from a contact listed as "Sheed," including two calls immediately after the shooting. When investigators called this number, Hall's phone rang.

Investigators obtained a warrant to search Hall's home, where they discovered several rounds of ammunition. Among the ammunition were fourteen .22 caliber rounds. A silver .22 caliber revolver was found roughly one block from Brown's house. The gun had five live rounds and one spent casing. Hall's clothes tested positive for gunpowder residue.

Detective Ted Wolkiewicz testified that he interviewed Brown on January 31, 2014. During the interview, Brown refused to sign any statements prepared by Detective Wolkiewicz, but admitted verbally that he was the one who had grabbed Williams' wallet, although he did not know that Hall had a gun at the time. Despite this admission, Brown attempted to procure alibi testimony from an ex-girlfriend, Tyenesha Leach. However, in Leach's statement to Detective Wolkiewicz, she admitted that she was not with Brown that night, and she was testifying because Brown had asked her to support him.

Brown was charged in two separate dockets, one of which contained the charge for conspiracy to commit aggravated assault (**Brown I**) and the other which contained the charges for robbery and conspiracy to commit robbery (**Brown II**). However, these two dockets were consolidated for the purpose of trial. A jury convicted Brown on May 22, 2015. On August 13, 2015, Brown was sentenced to 72 to 144 months' imprisonment for criminal conspiracy to commit aggravated assault, 102 to 204 months' imprisonment for robbery, and 78 to 156 months' imprisonment for conspiracy to commit robbery. The robbery and conspiracy to commit robbery sentences were

ordered to run concurrent to each other, while the conspiracy to commit aggravated assault sentence was ordered to run consecutive to the other sentences. On August 24, 2015, Brown filed a post-sentence motion for reconsideration of sentence for the **Brown I** charges, which was denied on September 17, 2015. On April 4, 2016, Brown filed a timely notice of appeal for **Brown I**. On April 4, 2016, Brown filed a timely notice of appeal *nunc pro tunc* for **Brown II**. Brown filed a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal on February 16, 2016 for **Brown I**. Brown filled a Rule 1925(b) concise statement of errors complained of on appeal on April 4, 2016 for **Brown II**. The trial court filed its Rule 1925(a) opinion for **Brown I** on May 2, 2016, and its Rule 1925(a) opinion for **Brown II** on July 1, 2016.[5]

Brown raises the following issues on review:

A. Did the trial court err when it found that there was sufficient evidence to prove beyond a reasonable doubt, the crimes of robbery, criminal conspiracy (to commit robbery) and criminal conspiracy (to commit aggravated assault)?

B. Did the trial court err when it sentenced appellant Clinton Brown to a term of incarceration which departed from the Pennsylvania sentencing guidelines for the criminal offenses of robbery and criminal conspiracy (to commit aggravated assault) and was in the aggravated range for criminal conspiracy (to commit robbery) which was manifestly excessive?

Brief of Appellant, at 2.

_____

[5] The trial court filed the same Rule 1925(a) opinion for both appeals.

Brown first claims that there was insufficient evidence to support his conviction. Our standard of review upon a challenge to the sufficiency of the evidence is well settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa. Super. 2001), quoting *Commonwealth v. Hennigan*, 753 A.2d 245, 253 (Pa. Super. 2000) (citations and quotation marks omitted).

Brown does not argue that the elements of robbery or aggravated assault were not satisfied, but instead argues that the evidence was insufficient to prove his identity as one of the two men involved in the robbery. In addition, Brown argues that there was insufficient evidence to show that Brown and Hall entered into a conspiracy. Both of these argument lack merit.

- 6 -

As to Brown's first argument, he relies on the fact that Williams never saw his or Hall's face and on the fact that Williams's identification of them was based solely on clothing. He contends, therefore, that identity could not be proven beyond a reasonable doubt. "Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be used as other circumstances to establish the identity of a perpetrator." *Commonwealth v. Orr*, 38 A.3d 868, 874 (Pa. Super. 2011) (*en banc*).

Upon review of the record and viewing all evidence in a light most favorable to the Commonwealth, *DiStefano, supra*, we find that there was sufficient evidence to prove Brown's and Hall identification and involvement in the robbery. First, Brown lied about his location when Officer Lally asked Brown where he was. Brown also tried to coerce Leach into giving false alibi testimony. Both of these reflect Brown's consciousness of guilt and support the jury's determination that Brown was the one who robbed Williams. *Commonwealth v. Carbone*, 574 A.2d 584, 589 (Pa. 1990) (citation omitted). Hall's identity as the shooter was supported by other evidence in addition to Williams's identification. The search of Halls' home produced numerous rounds of ammunition, including the type of ammunition used by a gun with one spent casing found near Brown's house and the location were Brown and Hall were arrested. Hall's clothing also tested positive for gunpowder residue. Brown's identity of the robber was supported by his own admission that he was the one who grabbed Williams's wallet.

- 7 -

Therefore, the claim that the identification was based solely on clothing is meritless. *See Orr*, 38 A.3d at 876 (finding that, while appellant's identification by victim was based on clothing, evidence that appellant was located near location of robbery shortly after it occurred and possessed exact amount stolen from victim was sufficient evidence to prove identity).

Brown also argues that there was insufficient evidence to prove that he entered into a conspiracy with Hall in order to commit robbery and aggravated assault. Criminal conspiracy is defined, in relevant part, as:

> **(a)** *Definition of conspiracy.* — A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> **(1)** agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
>
> **(2)** agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S. § 903(a)(1-2) (bold and italics in original). A conspiracy agreement "can be inferred from a variety of circumstances, including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode." *Commonwealth v. Perez*, 931 A.2d 703, 708 (Pa. Super. 2007) (quoting *Commonwealth v. Jones*, 874 A.2d 108, 121-22 (Pa. Super. 2005)).

Upon review of the record and viewing all evidence in a light most favorable to the Commonwealth, *DiStefano*, *supra*, and given our above finding on identification, we find that there was sufficient evidence to prove that a criminal conspiracy existed. Brown argues that the fact that he and Hall were located together and had numerous phone calls with each other suggests that the two were friends. However, this evidence also supports the conclusion that they had an agreement to commit the robbery together and to use force to escape if necessary. In addition, the fact that the two fled together after the commission of the crime, and called each other twice immediately afterwards, supports the conclusion that Brown and Hall had an agreement to commit this crime. Therefore, we find that there was sufficient evidence to allow the jury to conclude beyond a reasonable doubt that Brown and Hall entered into a conspiracy to commit robbery and aggravated assault. *Perez*, *supra*.

Brown's last claim is that his sentence was manifestly excessive. Initially, we note that while Brown argues in his brief that each of his three sentences were excessive, Brown only challenged his sentence for conspiracy to commit aggravated assault in his post-sentence motion for reconsideration of sentence. Consequently, we find that Brown waived his challenges of excessiveness for his robbery sentence and for his conspiracy to commit robbery sentence. *See* Pa.R.A.P. 302; *see also Commonwealth v. Watson*, 835 A.2d 786, 791 (Pa. Super. 2003) (issues challenging

discretionary aspects of sentencing must be raised in post-sentence motion or during sentencing proceeding).

Brown's claim involves a discretionary aspect of his sentence. "It is well-settled that appeals of discretionary aspects of a sentence are not reviewable as a matter of right." *Commonwealth v. Ladamus*, 896 A.2d 592, 595 (Pa. Super. 2006). Before a challenge to the discretionary aspects of a sentence will be heard on the merits, an appellant must set forth in his brief a separate and concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. Pa.R.A.P. 2119(f). An appeal of the discretionary aspects of a sentence will only be granted when there is a substantial question that the sentence imposed was not appropriate under the Sentencing Code. Pa.C.S. § 9781. Historically, this Court has found a substantial question exists for the purposes of section 9781 when the Rule 2119(f) statement reveals a plausible argument that procedures followed by the sentencing court were either inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms underlying the sentencing process. *Commonwealth v. Goggins*, 748 A.2d 721, 726 (Pa. Super. 2000) (*en banc*) (citations omitted).

Brown has included the necessary Rule 2119(f) statement in his brief. In his statement, Brown argues that his sentence was an abuse of discretion because his prior record was generated largely from arrests when he was a juvenile, and the court did not adequately consider the mitigating evidence.

Brief of Appellant, at 14. We have consistently held that a contention that the trial court did not adequately consider mitigating circumstances does not raise a substantial question sufficient to justify appellant review of the merits of such a claim. ***Commonwealth v. Ladamus***, 896 A.2d 592, 595 (Pa. Super. 2006). Nor does Brown cite to a specific provision of the Sentencing Code or to a fundamental norm of the sentencing process to support his claim the judge's consideration of Brown's juvenile record was inappropriate under the Sentencing Code. Therefore, Brown has not presented a substantial question for our review, and review of the merits of his challenge to the discretionary aspects of his sentence is unwarranted.

Judgments of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/24/2017

- 11 -